**IN THE UNITED STATES DISTRICT COURT**

**FOR THE DISTRICT OF NEW MEXICO**

TANYA R. ARRELLIN, ANNE BERNAL, MARY-ANN FISHER, JAMES V. HERRERA, MARY ALICE HERRERA, MARY JO KESLER, GURUMEET KHALSA, JANE E. LUMSDEN, individually and on behalf of Semilla Natural Foods, LLC, ORVIS M. MESTON, JOE MONTANO, OLEN C. PRIDDY, CASSANDRA C. RODRIGUEZ,

Plaintiffs,

vs. No. CIV 24-0979 JB/JFR

FEDERAL EMERGENCY MANAGEMENT AGENCY; DOES 1-20, inclusive,

Defendants.

**MEMORANDUM OPINION AND ORDER**

**THIS MATTER** comes before the Court on the Judicial Review Hearing that the Court held on the Plaintiffs' claims. See Clerk's Minutes at 1, filed April 16, 2026 (Doc. 111). The Court holds the Judicial Review Hearing on April 16, 2026, and April 17, 2026. See Clerk's Minutes at 1. The primary issues are: (i) whether the Court should limit its review of Defendant Federal Emergency Management Agency's determinations of the Plaintiffs' claims under the Hermit's Peak Fire Assistance Act Pub. L. No. 117-180, § 104, 136 Stat. 2114, 2168 (2022)("HPA"), to the record developed before the date that FEMA provides a judicially reviewable decision on the Plaintiffs' Hermit's Peak Act claims; and (ii) how much compensation FEMA must provide each individual Plaintiff, where the Plaintiffs provide different levels of substantiation for their damages claims. The Court concludes: (i) the Court will limit its judicial review to materials presented to FEMA before FEMA issued the decisions which the Court is reviewing -- which, in the Plaintiffs' cases, are the Letters of Determination -- because the HPA provides that a district court "shall"

review a challenged decision "on the record before the Administrator," HPA § 104(i)(1)-(2); and (ii) FEMA shall pay: (a) $24,694.95 to Plaintiff Tanya Arrellin, which includes $18,000.00 in noneconomic nuisance damages; (b) $234,389.91 to Plaintiff Anne Bernal, which includes $115,000.00 in noneconomic nuisance damages; (c) $1,169,687.91 to Plaintiff Mary Ann Fisher, which includes $215,000.00 in noneconomic nuisance damages; (d) $455,760.78 to Plaintiff Mary Alice Herrera, which includes $300,000.00 in noneconomic nuisance damages; (e) $272,125.75 to Plaintiff Mary Jo Kesler, which includes $195,000.00 in noneconomic nuisance damages; (f) $120,291.78 to Plaintiff Semilla Natural Foods, LLC; and (g) $24,995.06 to Plaintiff Cassandra Rodriguez, which includes $18,000.00 in noneconomic nuisance damages.

## ANALYSIS

The Court undertakes its analysis in two parts. First, the Court reaffirms its decision in Gallegos v. Federal Emergency Management Agency, No. 24-0170 JB/JFR, 2025 WL 2029724 (D.N.M. July 21, 2025)(Browning, J.)("Gallegos"), that it will limits its judicial review to materials presented to FEMA before FEMA issued the decisions which the Court is reviewing -- which, in Plaintiffs' cases, are the Letters of Determination -- because the HPA provides that a district court "shall" review a challenged decision "on the record made before the Administrator." HPA § 104(i)(1)-(2). Second, the Court evaluates each Plaintiffs' § 104(i) claim, conducts a substantial evidence review of the record before FEMA, and modifies FEMA's economic and noneconomic damages awards.

## I. THE COURT LIMITS ITS JUDICIAL REVIEW TO MATERIALS PRESENTED TO FEMA BEFORE FEMA ISSUED THE DECISIONS WHICH THE COURT IS REVIEWING.

Before turning to the opinion that follows, the Court reiterates its holding in Gallegos to clarify the evidentiary framework governing the analysis. In accordance with Gallegos, the Court will review documents submitted to FEMA before FEMA issues the decisions under § 104(i)

review, which, in the Plaintiffs' cases, are the Letters of Determination. See Gallegos, 2025 WL 2029724, at *28.

## II. THE COURT MODIFIES FEMA'S FINAL DECISIONS.

In this section, pursuant to § 104(i), the Court modifies FEMA's final decision for each plaintiff. The Court upholds FEMA's claim determinations that substantial evidence supports.[1] See HPA § 104(i)(3) ("The decision of the Administrator incorporating the findings of the Administrator shall be upheld if the decision is supported by substantial evidence on the record considered as a whole."). The Court addresses each Plaintiff in turn.

### A. THE COURT MODIFIES FEMA'S FINAL DECISION FOR TANYA ARRELLIN.

The Court modifies FEMA's final decision for T. Arrellin and enters $24,694.95 in total compensation, which includes $18,000.00 in noneconomic nuisance damages. T. Arrellin brings

---

[1] "To satisfy the substantial evidence standard, an agency need only rely on 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" Andalex Res., Inc. v. Mine Safety & Health Admin., 792 F.3d 1252, 1257 (10th Cir. 2015)(quoting Lax v. Astrue, 489 F.3d 1080, 1084 (10th Cir. 2007)). The standard "requires more than a scintilla, but less than a preponderance." Lax v. Astrue, 489 F.3d at 1084. Courts conducting substantial evidence review "neither reweigh the evidence nor substitute [their] judgment for that of the agency." Branum v. Barnhart, 385 F.3d 1268, 1270 (10th Cir. 2004). Substantial evidence review "is 'very deferential to the agency,'" and "'a presumption of validity attaches to the agency action and the burden of proof rests with the parties who challenge it.'" BNSF R. Co. v. U.S. Dep't of Lab., 816 F.3d 628, 638 (10th Cir. 2016)(quoting Ron Peterson Firearms, LLC v. Jones, 760 F.3d 1147, 1161-62 (10th Cir. 2014)).

> "The possibility of drawing two inconsistent conclusions from the evidence does not prevent an administrative agency's findings from being supported by substantial evidence. Thus, we may not displace the agency's choice between two fairly conflicting views, even though the court would justifiably have made a different choice had the matter been before it de novo."

Plateau Mining Corp. v. Fed. Mine Safety & Health Rev. Comm'n, 519 F.3d 1176, 1194 (10th Cir. 2008)(quoting Zoltanski v. F.A.A., 372 F.3d 1195, 1200 (10th Cir. 2004)). See McCray v. Soc. Sec. Admin., 435 F. Supp. 3d 1186, 1193 (D.N.M. 2020)(Browning, J.)(describing substantial evidence standard of review).

her claims on behalf of herself, Raynaldo Arrellin, and Amalia M. Hernandez. See Notice of Loss at 1 (dated November 7, 2023)(Arrellin-JR-AR-0165)("Arrellin Notice of Loss"). The Court starts first with the disputed economic damages. The first disputed category is lost wages. See Federal Emergency Management Agency's Pre-Hearing Brief at 11, filed April 14, 2026 (Doc. 105)("FEMA's Hearing Brief"). T. Arrellin seeks $207.40 for R. Arrellin's lost wages from the use of sick, vacation, administration, and holiday time because of the HPCC fire. See Proof of Loss at 2 (dated May 16, 2024)(Arrellin-JR-AR-0280)("Arrellin Proof of Loss"). FEMA awards T. Arrellin $0.00 for lost wages. See Final Claim Determination at 1 (dated August 12, 2024)(Arrellin-JR-AR-0247)("Arrellin Final Determination"). FEMA explains: "Based on the documentation you submitted, we were not able to verify you are financially responsible for the expenses." Arrellin Final Determination at 1. Neither law nor substantial evidence supports FEMA's decision to award T. Arrellin $0.00 for lost wages.

Lost wages are compensable as a "Financial Loss" under the HPA and FEMA's regulations. FEMA's Hearing Brief at 11. On May 5, 2022, the City of Las Vegas, New Mexico, informs employees that it is authorizing forty hours of paid emergency administrative leave for all staff members dealing with the consequences of the fire. See Memorandum from Mayor Louie Trujillo to All City Personnel at 1 (dated May 5, 2022)(Arrellin-JR-AR-0279)("Las Vegas Memo"). The Las Vegas Memo further states that "any leave needed after the 40 hours are exhausted will need to be utilized from your vacation or sick bank." Las Vegas Memo at 1. T. Arrellin submits R. Arrellin's Earning Statements (Arrellin-JR-AR-0007)("Arrellin Earning Statements"), for the relevant period, which show that he uses more than forty hours of emergency administrative leave, and therefore has to use accrued vacation and sick leave to cover the remaining time. It is unclear what FEMA means by asserting that R. Arrellin is not responsible for the expenses, because R. Arrellin does not seek reimbursement for expenses; he seeks compensation for lost wages

attributable to the fire. Arrellin Final Determination at 1. The Court therefore cannot conclude that substantial evidence supports FEMA's award of $0.00 for lost wages and instead awards T. Arrellin $207.40.

The Court turns to the disputed risk reduction measures. See FEMA's Hearing Brief at 13. At the hearing, T. Arrellin states that they are no longer seeking an amount for risk reduction measures. See April 16, 2026, Hearing Transcript at 34:4-8 ("April 16, 2026, Tr.")(Berkstresser). The Court therefore awards T. Arrellin $0.00 for risk reduction measures.

The Court next turns to noneconomic damages as these inform the claims preparation expenses to come. T. Arrellin challenges FEMA's denial of her $350,000.00 noneconomic nuisance damages request. See Arrellin Final Determination at 1. T. Arrellin tells FEMA that the Hermit's Peak Fire caused the power to go out in her house, making it harder to care for her type 2 diabetic daughter. See Arrellin Notice of Loss at 4. T. Arrellin also worries about the possibility of evacuating without her husband and son, which produces more stress and anxiety given that they were out volunteering to help fight the fire. See Arrellin Notice of Loss at 4. R. Arrellin also suffers stress and smoke inhalation while volunteering to fight the fire. See Arrellin Notice of Loss at 4. FEMA nevertheless awards T. Arrellin $0.00 for noneconomic damages. See Arrellin Final Determination at 1.

FEMA maintains that the agency should not award any noneconomic damages, because, according to FEMA, the HPA does not provide, as a matter of law, compensation for noneconomic damages. See April 16, 2026, Tr. at 37:1-15 (Go). As discussed in Gallegos, "a legal argument is not substantial evidence." Gallegos, 2025 WL 2029724, at *34. FEMA does not point to any record evidence which disputes T. Arrellin's noneconomic damages request. Thus, the Court concludes that neither the law nor substantial evidence supports the $0.00 noneconomic damages figure in the Arrellin Final Determination. On the other hand, T. Arrellin's request for $350.000.00

for the discomfort, inconvenience, and annoyance her family has suffered is too much. Accordingly, the Court modifies FEMA's final decision and awards $18,000.00 in noneconomic damages. Although T. Arrellin's request for $350,000.00 is excessive, the Arrellin Notice of Loss describes how the Hermit's Peak Fire makes it difficult for her to care for her daughter, who has type 2 diabetes; causes stress while her husband was away fighting the fire; and results in her husband's inhalation of smoke and attendant stress from the fire. These circumstances support an award for discomfort, inconvenience, and annoyance that is not insignificant.

Finally, the Court calculates T. Arrellin's claims preparation expense. Reimbursement for claims preparation expenses is compensable under 44 CFR 296.31(a). See FEMA's Hearing Brief at 10. The amount awarded for claims preparation expenses is "the greater of $150 or 5% of the Act's compensatory damages and insurance proceeds recovered by the claimant for HPCC Fire related injuries (not including the lump sum payment or monies reimbursed under the Act for the purchase of flood insurance) but will not exceed $25,000.00." 44 C.F.R. 296.31(b). Here, T. Arrellin's economic damages ($5,519.00) and noneconomic damages ($18,000.00) total $23,519.00. Five percent of $23,519.00 is $1,175.95. Accordingly, the Court awards T. Arrellin $1,175.95 in claims preparation expenses and orders FEMA to pay her a total of $24,694.95 on her disputed claim, including $18,000.00 in noneconomic nuisance damages.

**B. THE COURT MODIFIES FEMA'S FINAL DECISION FOR ANNE BERNAL.**

The Court modifies FEMA's final decision for Bernal and enters $234,389.91 in total compensation, which includes $115,000.00 in noneconomic nuisance damages. The Court starts first with the disputed economic damages. The first disputed category is firewood loss compensation. See FEMA's Hearing Brief at 16. Bernal seeks $15,935.00 in firewood loss compensation. See Proof of Loss at 3 (dated September 27, 2024)(Bernal-JR-AR-0523)("Bernal

Proof of Loss"). FEMA awards Bernal $0.00 for firewood loss compensation. See Final Claim Determination at 2 (dated May 20, 2025)(Bernal-JR-AR-0979)("Bernal Final Determination"). FEMA explains: "The claimed damages are not eligible under the Hermit's Peak/Calf Canyon Fire Assistance Act and implementing regulations." Bernal Final Determination at 2. Substantial evidence supports FEMA's decision to award Bernal $0.00 for firewood loss compensation.

Firewood loss is compensable under the HPA and FEMA's regulations as a subsistence loss. See FEMA's Hearing Brief at 16. "FEMA's policy distinguishes between resource owners (those who gather firewood from their own property) and non-resource owners (those who gather firewood from properties not their own) in determining eligibility and compensation for firewood losses." FEMA's Hearing Brief at 16. Non-resource owners are "limited to the cost of a firewood permit and mileage overages that they may now incur to access firewood from publicly available areas," and therefore must provide evidence of a firewood permit and substantiate any incurred mileage overages. FEMA' Hearing Brief at 17. Here, Bernal does not source firewood from her own property, so she is not entitled to compensation as a resource owner. See Bernal Proof of Loss at 3. Moreover, Bernal does not provide any evidence of incurred expenses for a firewood permit or any mileage overages "to access firewood from publicly available areas," and therefore is not entitled to compensation as a non-resource owner. See Bernal Proof of Loss at 3.

Bernal agrees that under FEMA's firewood loss policy, she is not entitled to compensation for this line item. See April 16, 2026, Tr. at 47:2-10 (Court, Berkstresser). Bernal instead argues that she is making a different claim -- one for financial loss -- because she can no longer afford the firewood because of its increased cost. See April 16, 2026, Tr. at 47:5-18 (Court, Berkstresser). Given that the increased cost of firewood is not within the categories of recognized financial loss in the HPA, Bernal is not entitled to compensation for this line item. See April 16, 2026, Tr. at 52:12-17 (Sydow). Moreover, even accepting that Bernal could recover for the increased cost of

firewood, Bernal does not substantiate any increased cost of firewood here. Substantial evidence therefore supports FEMA's decision to award Bernal $0.00 in firewood loss compensation.

The Court next turns to noneconomic damages as these inform the claims preparation expenses to come. Bernal challenges FEMA's denial of her $115,000.00 noneconomic nuisance damages request. See Bernal Final Determination at 1. Bernal tells FEMA that the Hermit's Peak Fire causes her to evacuate the property she lived on her entire life. See Bernal Proof of Loss at 4. Bernal saw the flames on the mountain while she was evacuating; this evacuation made it difficult to pack with all the smoke and ash in the air. See Bernal Proof of Loss at 4. Bernal had to live in Albuquerque for about "2 or 4 weeks until temporarily moving in with her in-laws in California for three months" as a result of the evacuation. Bernal Proof of Loss at 4. Bernal's husband also was on hospice and his wish to die at the home went unfulfilled because of the damages to the property. See Bernal Proof of Loss at 4. Bernal also could not have a funeral for her husband as a result of the Hermit's Peak Fire. See Bernal Proof of Loss at 4. FEMA nevertheless awards Bernal $0.00 for noneconomic damages. See Bernal Final Determination at 1.

FEMA maintains that the agency should not award any noneconomic damages, because, according to FEMA, the HPA does not provide, as a matter of law, compensation for noneconomic damages. See FEMA's Hearing Brief at 18. As discussed in Gallegos, "a legal argument is not substantial evidence." Gallegos, 2025 WL 2029724, at *34. Thus, the Court concludes that neither the law nor substantial evidence supports the $0.00 noneconomic damages figure in the Bernal Final Determination, which is the final decision under review here. See HPA § 104(i)(1).

At the hearing, FEMA offers a noneconomic damages award of $1,306.00. See April 16, 2026, Tr. at 59:1-25 (Sydow). Bernal does not seek judicial review of FEMA's offer at the hearing, because the offer is neither "a final decision of the Administrator" by which Bernal is "aggrieved,"

nor is it a "final decision" which Bernal asks the Court to "modify or set aside." HPA § 104(i)(1). Instead, Bernal asks the Court to modify or set aside FEMA's final decision in the Bernal Letter of Determination. See Bernal Final Determination at 1. Thus, because FEMA's offer at the hearing is not under § 104(i)(1) review, FEMA's offer at the hearing is not subject to substantial evidence review. Nevertheless, FEMA's offer at the hearing is helpful to the Court's thinking and analysis. The Court concludes, however, that substantial evidence also does not support FEMA's $1,306.00 offer at the hearing, because that offer is almost $0.00 and does not reflect the not insignificant discomfort, inconvenience, and annoyance that Bernal experiences during her displacement. Accordingly, the Court modifies FEMA's final decision and enters $115,000.00 in noneconomic damages.

Finally, the Court calculates Bernal's claims preparation expense. Reimbursement for claims preparation expenses is compensable under 44 CFR 296.31(a). See FEMA's Hearing Brief at 10. The amount awarded for claims preparation expenses is "the greater of $150 or 5% of the Act's compensatory damages and insurance proceeds recovered by the claimant for HPCC Fire related injuries (not including the lump sum payment or monies reimbursed under the Act for the purchase of flood insurance) but will not exceed $25,000.00." 44 C.F.R. 296.31(b). Here, Bernal's economic damages ($108,228.49) and noneconomic damages ($115,000.00) total $223,228.49. Five percent of $223,228.49 is $11,161.42. Accordingly, the Court awards Bernal $11,161.42 in claims preparation expenses and orders FEMA to pay her a total of $234,389.91 on her disputed claim, including $115,000.00 in noneconomic nuisance damages.

### C. THE COURT MODIFIES FEMA'S FINAL DECISION FOR MARY ANN FISHER.

The Court modifies FEMA's final decision for Fisher and enters $1,169,687.91 in total compensation, which includes $215,000.00 in noneconomic nuisance damages. The Court starts

first with the disputed economic damage. The first disputed category is reforestation expenses. See FEMA's Hearing Brief at 19. Fisher seeks $91,250.00 in reforestation expenses. See April 16, 2026, Tr. at 74:8-13 (Court, Berkstresser). FEMA awards Bernal $59,784.26 for reforestation expenses. See Final Claim Determination at 3 (dated August 8, 2024)(Fisher-JR-AR-1219)("Fisher Final Claim Determination"). FEMA explains: "Based on the documentation provided, we were not able to substantiate the requested dollar amount." Fisher Final Determination at 3. Substantial evidence supports FEMA's decision to award Fisher $59,784.26 for reforestation expenses.

The HPA compensates property loss pertaining to "a cost of reforestation or revegetation." FEMA's Hearing Brief at 19. Here, FEMA awards Fisher $59,784.26 for "Reforestation -- Tree/Shrub Establishment." Fisher Final Claim Determination at 3. Fisher accepts the reforestation award in a Release of Certification signed on July 22, 2024. See Release and Certification (dated July 22, 2024)(Fisher-JR-AR-0893)("Fisher Release"). Fisher's acceptance of FEMA's reforestation award in the Fisher Release therefore forecloses Fisher's challenge on the reforestation line item.

Fisher argues that rather than bringing a reforestation claim, she is seeking repayment for the damaged landscaped trees. See April 16, 2026, Tr. at 74:8-13 (Court, Berkstresser). This argument fails, because, in the Fisher Final Claim Determination, FEMA expressly considers Fisher's expert report, which includes the cost of the damaged landscaped trees. See Claim Review Report Memorandum at 4 (dated February 16, 2024)(HPCC_Pltf_Fisher_Mary_Ann_000119). Because FEMA considers Fisher's claimed landscape tree damages, offers compensation, Fisher accepts that amount, and Fisher releases any further claims on this issue, substantial evidence supports FEMA's decision to award Fisher $59,784.26 for reforestation.

Fisher next challenges "GRT on Landscape Trees," but tells the Court at the hearing that this request is a duplicate and asks the Court to ignore the request. See April 16, 2026, Tr. at 81:16-18 (Berkstresser). The Court therefore does not consider the dispute. See April 16, 2026, Tr. at 81:19-20 (Court).

The next disputed economic damage is erosion control. See FEMA's Hearing Brief at 21. The HPA allows compensation for any other real property loss that FEMA deems appropriate. See FEMA's Hearing Brief at 21. FEMA's policy provides compensation "for damage to privately owned roads and trails that existed prior to the fire and were directly impacted by the fire or subsequent cascading impacts such as flooding and debris flows." FEMA's Hearing Brief at 21. Here, Fisher seeks $197,967.00 for erosion control. See Fisher Final Claim Determination at 2. FEMA awards Fisher $14,227.30 for erosion control. See Fisher Final Claim Determination at 2. Substantial evidence does not support FEMA's decision to award Fisher $14,227.30 for erosion control.

Fisher's disputed erosion control request consists of three items: (i) re-grading her dirt roads totaling $118,324.00; (ii) re-grading her gravel roads totaling $6,659.00; and (iii) re-grading her gravel roads, using a six-inch thick layer ¾ inch aggregate base, totaling $11,125.00. See FEMA's Hearing Brief at 22. The Court addresses each claim in turn.

First, FEMA rejects in full Fisher's request for re-grading her dirt roads ($118,324.00). See SME Review Memo for Repairs/Risk Reduction/Erosion Control at 2 (dated June 17, 2024)(HPCC_Pltf_Fisher_Mary_Ann_000111)("FEMA Erosion Memo"). FEMA argues that the Court should reject Fisher's request, because the dirt roads do not exist before the fire, and their policies do not allow for compensation for roads that did not exist before the fire. See FEMA's Hearing Brief at 23. Fisher argues that these roads did exist before the fire and therefore that FEMA should compensate her for their re-grading. See April 16, 2026, Tr. at 82:1-25

(Berkstresser). Viewing the map of Fisher's land before the fire, there are dirt roads on her land. See 2022 Hermits Peak & Calf Canyon Fires Preliminary Inventory of Property Repairs at Figure 2 (dated March 2021)(Fisher-JR-AR-1147)("Fisher Pre-Fire Road Map"). Substantial evidence does not support FEMA argument that the post-fire map does not show any evidence of roads on the land, because, in viewing the post-fire map, there are roads on the land. See 2022 Hermits Peak & Calf Canyon Fires Preliminary Inventory of Property Repairs at Figure C-3 (dated March 2021)(Fisher-JR-AR-1147)("Fisher Post-Fire Road Map"). The Court therefore cannot conclude that substantial evidence supports FEMA's award of $0.00 for Fisher's re-grading her dirt road and instead awards Fisher $118,324.00.

FEMA next contests Fisher's re-grading her gravel roads totaling $6,659.00. See FEMA's Hearing Brief at 22. Because of FEMA's policy that only gravel roads located in moderate debris flow areas -- the area in which Fisher's land is located -- are entitled to two re-gradings, FEMA argues that Fisher's re-grading of gravel roads award should be reduced by one-third. See FEMA's Hearing Brief at 23. FEMA argues that Fisher's request for three re-gradings is an amount that FEMA does not believe she should receive because of the location of Fisher's land. See FEMA's Hearing Brief at 23. Fisher argues that there is no evidence that "supports whatever methodology [FEMA] may have used to come up with" two re-grades for moderate areas and three re-grades for high areas. See April 16, 2026, Tr. at 104:18-25 (Berkstresser). The Court agrees that there is no substantial evidence in the record to explain why Fisher's methodology of three re-gradings is unreasonable. See April 16, 2026, Tr. at 104:4-17 (Court). The Court therefore does not conclude that substantial evidence supports FEMA's award of $4,439.33 for Fisher's re-grading her gravel road and instead modifies the award to give Fisher $6,659.00.

FEMA makes the same argument for Fisher re-grading her gravel roads, using a six-inch thick layer ¾ inch aggregate base, totaling $11,125.00. See FEMA's Hearing Brief at 23. The

Court comes to the same conclusion that there is no substantial evidence in the record to explain why Fisher's methodology of three re-gradings is unreasonable. See April 16, 2026, Tr. at 104:4-17 (Court). The Court concludes that substantial evidence does not support FEMA's award of $7,416.67 for Fisher re-grading her gravel roads using a six-inch thick layer ¾ inch aggregate base and instead awards Fisher $11,125.00. The Court therefore awards Fisher damages for erosion control in the sum of $195,654.00.

Fisher also seeks a gross receipts tax on erosion control totaling 6.583% of the new total erosion control damages. See FEMA's Hearing Brief at 25. Fisher may not seek, however, an adjustment of the gross receipts tax award, because Fisher accepted a prior award for gross receipts tax totaling $936.62 in the Release and Certification submitted to FEMA. See FEMA's Hearing Brief at 25. The Court therefore concludes that there is substantial evidence for FEMA to award Fisher $936.62 for gross receipts tax on erosion control.

The Court finally turns to noneconomic damages as these inform the claims preparation expenses. Fisher challenges FEMA's denial of her $215,000.00 noneconomic nuisance damages request. See Fisher Final Determination at 1. Fisher tells FEMA that she "lost everything in the fire." Fisher Proof of Loss at Attachment 1. Fisher is battling leukemia and COPD while her partner James is also battling with COPD; they planned to spend their remaining days on their property considering these severe health issues, but are now unable to live out their plan. See Fisher Proof of Loss at Attachment 1. Fisher tells FEMA that James spent many hours working in the garage on the property and this work allowed him to purchase medications for his COPD, but he has been unable to do that since the fire. See Fisher Proof of Loss at Attachment 1. Moreover, while Fisher and James evacuate because of the fire, they cannot breathe because of the heavy smoke in the air. See Fisher Proof of Loss at Attachment 1. FEMA nevertheless awards Fisher $0.00 for noneconomic damages. See Fisher Final Determination at 1.

FEMA maintains that it cannot award any noneconomic damages, because, according to FEMA, the HPA does not provide, as a matter of law, compensation for noneconomic damages. See FEMA's Hearing Brief at 25. As discussed in Gallegos, "a legal argument is not substantial evidence." Gallegos, 2025 WL 2029724, at *34. Thus, the Court concludes that neither the law nor substantial evidence supports the $0.00 noneconomic damages award in the Fisher Final Determination, which is the final decision under review here. See HPA § 104(i)(1).

At the hearing, FEMA offers a noneconomic damages award of $18,612.00. See April 16, 2026, Tr. at 111:10-19 (Go). Fisher does not seek judicial review of FEMA's offer at the hearing, because the offer is neither "a final decision of the Administrator" by which Fisher is "aggrieved," nor is it a "final decision" that Fisher asks the Court to "modify or set aside." HPA § 104(i)(1). Instead, Fisher asks the Court to modify or set aside FEMA's final decision in the Fisher Letter of Determination. See Fisher Final Determination at 1. Thus, because FEMA's offer at the hearing is not under § 104(i)(1) review, FEMA's offer at the hearing is not subject to substantial evidence review. Nevertheless, FEMA's offer at the hearing is helpful to the Court's thinking and analysis. The Court concludes, however, that substantial evidence also does not support FEMA's $18,612.00 offer at the hearing, because that offer does not reflect the not insignificant discomfort, inconvenience, and annoyance that Fisher experiences during her displacement. Accordingly, the Court modifies FEMA's final decision and enters $215,000.00 in noneconomic damages.

Finally, the Court calculates Fisher's claims preparation expense. Reimbursement for claims preparation expenses is compensable under 44 C.F.R. 296.31(a). See FEMA's Hearing Brief at 10. The amount awarded for claims preparation expenses is "the greater of $150 or 5% of the Act's compensatory damages and insurance proceeds recovered by the claimant for HPCC Fire related injuries (not including the lump sum payment or monies reimbursed under the Act for the purchase of flood insurance) but will not exceed $25,000.00." 44 C.F.R. 296.31(b). Here, Fisher's

economic damages ($928,687.91) and noneconomic damages ($215,000.00) total $1,143,687.91. The Court adds $25,000.00 for claims preparation expenses because 5% of $1,143,687.91 is more than $25,000.00. Accordingly, the Court awards Fisher $25,000.00 in claims preparation expenses and orders FEMA to pay her a total of $1,169,687.91 on her disputed claim, including $215,000.00 in noneconomic nuisance damages.

### D. THE COURT MODIFIES FEMA'S FINAL DECISION FOR MARY ALICE HERRERA.

The Court modifies FEMA's final decision for Herrera and enters $455,760.78 in total compensation, which includes $300,000.00 in noneconomic nuisance damages. The Court starts with noneconomic damages as these inform the claims preparation expenses to come. Fisher challenges FEMA's denial of her $300,000.00 noneconomic nuisance damages request. See Final Claim Determination at 2 (dated August 7, 2024)(M.Herrera-JR-AR-0386)("Herrera Final Determination"). Herrera tells FEMA that she owns two homes in the Las Vegas, New Mexico area. See Notice of Loss at 6 (dated April 14, 2023)(M. Herrera-JR-AR-0158)("Herrera Notice of Loss"). When the fire started, Herrera evacuates from her main residence to her secondary address. See Herrera Notice of Loss at 6. Shortly after the evacuation, Herrera evacuates from her secondary address. See Herrera Notice of Loss at 6. Herrera tells FEMA that the evacuations are very stressful, because she does not have much time to pack or think about leaving. See Herrera Notice of Loss at 6. Moreover, upon returning to her two homes, Herrera has dealt with one property suffering severe smoke damage and her second home being rendered completely useless from flooding. See Herrera Notice of Loss at 6. FEMA nevertheless awards Herrera $0.00 for noneconomic damages. See Herrera Final Determination at 2.

FEMA maintains that the agency should not award any noneconomic damages, because, according to FEMA, the HPA does not provide, as a matter of law, compensation for noneconomic

damages. See FEMA's Hearing Brief at 27. As discussed in Gallegos, "a legal argument is not substantial evidence." Gallegos, 2025 WL 2029724, at *34. Thus, the Court concludes that neither the law nor substantial evidence supports the $0.00 noneconomic damages figure in the Herrera Final Determination, which is the final decision under review here. See HPA § 104(i)(1).

At the hearing, FEMA offers a noneconomic damages award of $1,000.00. See April 16, 2026, Tr. at 115:1-10 (Sydow). Herrera does not seek judicial review of FEMA's offer at the hearing, because the offer is neither "a final decision of the Administrator" by which Herrera is "aggrieved," nor it is a "final decision" which Herrera asks the Court to "modify or set aside." HPA § 104(i)(1). Instead, Herrera asks the Court to modify or set aside FEMA's final decision in the Herrera Letter of Determination. See Herrera Final Determination at 1. Thus, because FEMA's offer at the hearing is not under § 104(i)(1) review, FEMA's offer at the hearing is not subject to substantial evidence review. Nevertheless, FEMA's offer at the hearing is helpful to the Court's thinking and analysis. The Court concludes, however, that substantial evidence also does not support FEMA's $1,000.00 offer at the hearing, because that offer is almost $0.00 and does not reflect the not insignificant discomfort, inconvenience, and annoyance that Herrera experiences during her displacement. Accordingly, the Court modifies FEMA's final decision and enters $300,000.00 in noneconomic damages.

Finally, the Court calculates Herrera's claims preparation expense. Reimbursement for claims preparation expenses is compensable under 44 C.F.R. 296.31(a). See FEMA's Hearing Brief at 10. The amount awarded for claims preparation expenses is "the greater of $150 or 5% of the Act's compensatory damages and insurance proceeds recovered by the claimant for HPCC Fire related injuries (not including the lump sum payment or monies reimbursed under the Act for the purchase of flood insurance) but will not exceed $25,000.00." 44 C.F.R. 296.31(b). Here, Herrera's economic damages ($134,057.89) and noneconomic damages ($300,000.00) total

$434,057.89. Five percent of $434,057.89 is $21,702.89. Accordingly, the Court awards Herrera $21,702.89 in claims preparation expenses and orders FEMA to pay her a total of $455,760.78 on her disputed claim, including $300,000.00 in noneconomic nuisance damages.

### E. THE COURT MODIFIES FEMA'S FINAL DECISION FOR MARY JO KESLER.

The Court modifies FEMA's final decision for Kesler and enters $272,125.75 in total compensation, which includes $195,000.00 in noneconomic nuisance damages. The Court starts first with the disputed economic damage. The first disputed category is erosion expert fees. See FEMA's Hearing Brief at 29. Kesler, however, tells the Court that she is no longer contesting that line item. See April 16, 2026, Tr. at 129:3-4 (Berkstresser). The Court therefore does not modify Kesler's erosion expert fees.

The Court next turns to noneconomic damages as these inform the claims preparation expenses to come. Kesler challenges FEMA's denial of her $300,000.00 noneconomic nuisance damages request. See Final Claim Determination at 2 (dated August 7, 2024)(Kesler-JR-AR-0870)("Kesler Final Determination"). Kesler tells FEMA that she grew up on the property that the fire impacts. See Notice of Loss at 4 (dated May 18, 2024)(Kesler-JR-AR-0028)("Kesler Notice of Loss"). Kesler sees the fire within a mile of her property. See Kesler Notice of Loss at 4. Kesler runs to the property in a panic and grabs as much as she can before fleeing. See Kesler Notice of Loss at 4. Kesler tells FEMA that, when she returns to the property, the ponderosa pine trees that she loves were burned. See Kesler Notice of Loss at 4. Kesler also lost power on the property for almost a month. See Kesler Notice of Loss at 4. FEMA nevertheless awards Kesler $0.00 for noneconomic damages. See Kesler Final Determination at 2.

FEMA maintains that the agency should not award any noneconomic damages, because, according to FEMA, the HPA does not provide, as a matter of law, compensation for noneconomic

damages. See April 16, 2026, Tr. at 37:1-15 (Go). As discussed in Gallegos, "a legal argument is not substantial evidence." Gallegos, 2025 WL 2029724, at *34. FEMA does not point to any record evidence which disputes Kesler's noneconomic damages request. Thus, the Court concludes that neither the law nor substantial evidence supports the $0.00 noneconomic damages figure in the Kesler Final Determination. On the other hand, Kesler's request for $300.000.00 for the discomfort, inconvenience, and annoyance her family suffers is too much. Accordingly, the Court modifies FEMA's final decision and awards $195,000.00 in noneconomic damages. Although Kesler's request for $300,000.00 is excessive, the Kesler Notice of Loss describes how Kesler sees the fire within a mile of her property, rushes to remove as much as she can from the property, and is without power for almost a month. These circumstances support an award for discomfort, inconvenience, and annoyance that is not insignificant.

Finally, the Court calculates Kesler's claims preparation expense. Reimbursement for claims preparation expenses is compensable under 44 C.F.R. 296.31(a). See FEMA's Hearing Brief at 10. The amount awarded for claims preparation expenses is "the greater of $150 or 5% of the Act's compensatory damages and insurance proceeds recovered by the claimant for HPCC Fire related injuries (not including the lump sum payment or monies reimbursed under the Act for the purchase of flood insurance) but will not exceed $25,000.00." 44 C.F.R. 296.31(b). Here, Kesler's economic damages ($64,167.38) and noneconomic damages ($195,000.00) total $259,167.38. Five percent of $259,167.38 is $12,958.37. Accordingly, the Court awards Kesler $12,958.37 in claims preparation expenses and orders FEMA to pay her a total of $272,125.75 on her disputed claim, including $195,000.00 in noneconomic nuisance damages.

**F. THE COURT MODIFIES FEMA'S FINAL DECISION FOR GURUMEET KHALSA.**

The Court modifies FEMA's final decision for Khalsa and enters $472,862.03 in total compensation, which includes $50,000.00 in noneconomic nuisance damages. The Court starts first with the disputed economic damage. The first disputed category is access road repair. See FEMA's Hearing Brief at 31. Khalsa seeks $308,232.67 in access road repair. See Final Claim Determination at 2 (dated August 14, 2024)(Khalsa-JR-AR-0559)("Khalsa Final Determination"). FEMA awards Khalsa $78,241.48 for access road repair. See Khalsa Final Determination at 2. FEMA bases this determination on their Erosion Control report. See Khalsa Final Determination at 2. Neither law nor substantial evidence supports FEMA's decision to award Khalsa $78,241.48 for access road repair.

The HPA compensates property loss associated with access road repair. See FEMA's Hearing Brief at 31. The principal dispute is the extent of the road network on Khalsa's property. See April 16, 2026, Tr. at 152:20-24 (Go). Khalsa maintains that the property contains approximately 20,000 square yards of roads, while FEMA contends that only about 3,000 square yards exist. See April 16, 2026, Tr. at 152:20-24 (Go). Khalsa supports her estimate with expert analysis, contemporaneous photographs, and pre-fire Google Earth imagery documenting the road system. See Google Earth Aerial Photograph (dated June 2017)(HPCC_Pltf_Khalsa_Gurumeet_000048); Khalsa Property Inspection (dated April 5, 2023)(HPCC_Pltf_Khalsa_Gurumeet_000061). FEMA, by contrast, relies on an expert memorandum that reviews the same materials but summarily concludes that only 3,000 square yards of roads exist. See SME Review Memo for Erosion Repairs (dated July 23, 2024)(HPCC_Pltf_Khalsa_Gurumeet_000091). FEMA's conclusion lacks an adequate evidentiary basis. The agency identifies no objective evidence demonstrating that the road network is materially smaller than Khalsa's submissions depict. After independently reviewing the photographs and satellite imagery, the Court concludes that the pre-fire and post-fire images

consistently depict the same road system, and corroborate Khalsa's estimate. See April 16, 2026, Tr. at 165:12-25 (Court). Because FEMA's contrary finding lacks support in substantial evidence, the Court concludes that Khalsa should recover based on approximately 20,000 square yards of access roads. See April 16, 2026, Tr. at 165:19-22 (Court).

Khalsa's repair estimate identifies three categories of access road work based on road categories and the regrading necessary. See Cost Estimate for Gurumeet Khalsa Property Repairs (dated May 23, 2023)(HPCC_Pltf_Khalsa_Gurumeet_000046)("Khalsa Cost Estimate"). The estimate includes $100,444.00 to regrade dirt roads, $30,114.00 to regrade gravel roads, and $51,070.00 to regrade gravel roads requiring a ¾-inch aggregate base, for a subtotal of $181,628.00. FEMA disputes this figure, arguing that it improperly reflects three separate gradings rather than the single grading approach FEMA contends is appropriate. The Court disagrees with FEMA's argument for the reasons stated above. The Court adopts FEMA's mobilization figure and adds $1,380.00, producing a subtotal of $183,008.00. See April 16, 2026, Tr. at 172:12-15 (Court). Adding five percent for erosion control ($9,081.40) results in $192,089.40. Adding a ten percent contingency ($18,162.80) yields total access road repair damages of $210,252.20. The Court therefore concludes that the record contains substantial evidence supporting an award of $210,252.20 for access road repairs.

The remaining disputed economic damage is the erosion tax. See FEMA's Hearing Brief at 35. Because the erosion tax is calculated as 6.583% of the revised access road repair award, the Court must recalculate the tax using $210,252.20. See April 16, 2026, Tr. at 173:10-12 (Berkstresser). Applying that percentage results in an erosion tax of $13,840.90. The Court therefore concludes that the record contains substantial evidence supporting an award of $13,840.90 for erosion tax.

The Court finally turns to noneconomic damages as these inform the claims preparation expenses to come. Khalsa challenges FEMA's denial of her $50,000.00 noneconomic nuisance damages request. See Khalsa Final Determination at 2. Khalsa tells FEMA that she originally bought the land because of its beauty and location to build a residential house. See Notice of Loss at 4 (dated June 3, 2023)(Khalsa-JR-AR-0285)("Khalsa Notice of Loss"). As a result of the fire, Khalsa has had to delay the building of her house by several years. See Khalsa Notice of Loss at 4. Khalsa also tells FEMA that the loss of trees, vegetation, and wild flowers on the property takes away from the property's beauty. See Khalsa Notice of Loss at 4. FEMA nevertheless awards Khalsa $0.00 for noneconomic damages. See Khalsa Final Determination at 2.

FEMA maintains that the agency should not award any noneconomic damages, because, according to FEMA, the HPA does not provide, as a matter of law, compensation for noneconomic damages. See April 16, 2026, Tr. at 37:1-15 (Go). As the Court discusses in Gallegos, "a legal argument is not substantial evidence." Gallegos, 2025 WL 2029724, at *34. FEMA does not point to any record evidence which disputes Khalsa's noneconomic damages request. Thus, the Court concludes that neither the law nor substantial evidence supports the $0.00 noneconomic damages figure in the Khalsa Final Determination, because that offer does not reflect the not insignificant discomfort, inconvenience, and annoyance that Khalsa experiences. Accordingly, the Court modifies FEMA's final decision and enters $50,000.00 in noneconomic damages.

Finally, the Court calculates Khalsa's claims preparation expense. Reimbursement for claims preparation expenses is compensable under 44 C.F.R. 296.31(a). See FEMA's Hearing Brief at 10. The amount awarded for claims preparation expenses is "the greater of $150 or 5% of the Act's compensatory damages and insurance proceeds recovered by the claimant for HPCC Fire related injuries (not including the lump sum payment or monies reimbursed under the Act for the purchase of flood insurance) but will not exceed $25,000.00." 44 C.F.R. 296.31(b). Here, Khalsa's

economic damages ($400,344.79) and noneconomic damages ($50,000.00) total $450,344.79. Five percent of $450,344.79 is $22,517.24. Accordingly, the Court awards Khalsa $22,517.24 in claims preparation expenses and orders FEMA to pay her a total of $472,862.03 on her disputed claim, including $50,000.00 in noneconomic nuisance damages.

**G. THE COURT MODIFIES FEMA'S FINAL DECISION FOR SEMILLA NATURAL FOODS, LLC.**

The Court modifies FEMA's final decision for Semilla Natural Foods, LLC and enters $120,291.78 in total compensation. The only damages at issue for Semilla Natural Foods, LLC is the claims preparation expense. See FEMA's Hearing Brief at 36. After Semilla Natural Foods, LLC represents that the entity as well as Jane Lumsden -- Semilla Natural Foods, LLC's owner -- have no other claims under the HPA, FEMA agrees that it is appropriate to enter an amount for the claims preparation expenses. See April 16, 2026, Tr. at 185:2-25 (Court, Berkstresser, Yang). The amount awarded for claims preparation expenses is "the greater of $150 or 5% of the Act's compensatory damages and insurance proceeds recovered by the claimant for HPCC Fire related injuries (not including the lump sum payment or monies reimbursed under the Act for the purchase of flood insurance) but will not exceed $25,000.00." 44 C.F.R. 296.31(b). Here, Semilla Natural Foods, LLC's damages total $114,563.60. Five percent of $114,563.60 is $5,728.18. Accordingly, the Court awards Semilla Natural Foods, LLC $5,728.18 in claims preparation expenses and orders FEMA to pay a total of $120,291.78 on the disputed claim.

**H. THE COURT DOES NOT MODIFY FEMA'S FINAL DECISION FOR ORVIS MESTON.**

The parties ask the Court not to consider Meston's claims. See April 16, 2026, Tr. at 186:9-19 (Court, Berkstresser, Sydow). The Court therefore does not modify FEMA's final decision for Meston. See Final Claim Determination (dated August 7, 2024)(Meston-JR-AR-0527).

**I. THE COURT DOES NOT FURTHER MODIFY FEMA'S FINAL DECISION FOR OLEN PRIDDY.**

The question before the Court on Priddy's request to modify FEMA's award is whether the Court's prior judicial review of FEMA's final determination forecloses Priddy's present attempt to obtain additional judicial review of the same final agency decision. See FEMA's Hearing Brief at 37. The Court concludes that the prior judicial review forecloses a further modification. Because Priddy previously seeks judicial review of FEMA's final determination and obtains a judgment modifying that determination, he may not return to the Court again to challenge FEMA's final determination on the same claim.

In Gallegos, Priddy seeks review of "FEMA's final determination of his claim." Gallegos v. FEMA, No. 24-0170, Complaint ¶ 11, at 5, filed February 20, 2024 (Doc. 1). During the Gallegos judicial review hearing, Priddy challenges only FEMA's denial of his noneconomic nuisance damages. See Gallegos, 2025 WL 2029724, at *9. At the time of that proceeding, however, Priddy already possesses FEMA's Final Claim Determination, which awards him $0.00 for increased mortgage interest and $0.00 for evacuation expenses -- two of the line items that he now challenges in this proceeding. See Final Claim Determination at 2 (dated August 2, 2024)(Priddy-JR-AR-0549)("Priddy Final Determination"). The Court ultimately enters judgment modifying FEMA's determination and entering for Priddy $206,991.36 in total damages, including $150,000.00 in noneconomic damages. See Gallegos, 2025 WL 2029724, at *35. That judgment resolves judicial review of FEMA's final decision, and it exhausts the Court's statutory role with respect to that decision.

The controlling statutory framework confirms that result. The HPA provides:

> Any claimant aggrieved by a final decision of the Administrator under this Act may, not later than 60 days after the date on which the decision is issued, bring a civil action in the United States District Court for the District of New Mexico, to modify or set aside the decision, in whole or in part.

HPA §104(i)(1) (emphasis added). The operative trigger for judicial review is the issuance of a final decision and not the claimant's selection of particular issues within that decision. The statute authorizes "a civil action" -- singular -- to modify or set aside "the decision" -- also singular. HPA §104(i)(1). The provision's structure thus ties judicial review to the agency's final determination as a unitary adjudicatory act.

Several other sections within the HPA support the Court's conclusion that the HPA contemplates one judicial review of a final agency decision. Section 104(d)(2)(A) allows FEMA to make "advance or partial payments" before the "final settlement of a claim," including payment of a portion or aspect of a claim that is "severable." HPA § 104(d)(2)(A). That FEMA may pay a claim in part does not mean that each part is subject to a separate judicial review. Section 104(d)(2)(B) addresses what happens when a claimant receives a partial payment, but FEMA later denies further payment: the claimant may then seek judicial review under subsection (i). See HPA § 104(d)(2)(B). Thus, the statute distinguishes between a partial payment that FEMA makes before final settlement and the final agency decision that is subject to judicial review. Nothing in this provision authorizes a claimant to obtain one judicial review of a final decision and then return to the Court for a second review of another portion of that same decision. To the contrary, the provision confirms that "partial" describes the payment and not the scope of judicial review.

Further in support, § 104(h)(1) provides that an injured person may elect to seek compensation from the United States for "1 or more injuries" resulting from the Hermit's Peak Fire through one of the specified avenues. HPA § 104(h)(1). Thus, the statute recognizes that a single claim may involve multiple injuries or components. The statute does not treat each injury, however, as a separate claim. Instead, § 104(h)(2) provides that the claimant's election becomes "final and conclusive on the claimant with respect to all injuries resulting from" the Hermit's Peak Fire once the claimant accepts an award. HPA § 104(h)(2). That language's breadth is significant.

Congress does not provide that the claimant's claim becomes final and conclusive only as to the particular injury or component for which the claimant seeks payment. It makes the claim final and conclusive as to "all injuries" resulting from the Hermit's Peak Fire. HPA § 104(h)(2). In other words, the statute treats the claimant's injuries from the Hermit's Peak Fire as a single overall claim for purposes of finality, even though that claim may contain multiple components.

The HPA's arbitration provision further supports this reading. Congress expressly provides that an injured person who submits a disputed claim may elect to resolve "the claim" through arbitration. HPA § 104(h)(3)(C). That election is "binding" and "preclude[s]" the claimant from exercising the right to judicial review of "the claim" under subsection (i). HPA § 104(h)(3)(C)(ii). The statute therefore treats the claim as one for purposes of determining the consequences of the claimant's election. It does not contemplate that a claimant may arbitrate one portion of a claim while preserving the right to seek judicial review of another portion of the same claim. Allowing a claimant to bring separate actions on different portions of the same claim effectively circumvents that statutory bar, permitting a claimant to obtain both arbitration and juridical review of a single claim in a manner that Congress does not authorize.

Accordingly, the statutory scheme does not permit a claimant to split a single final agency decision into multiple separate lawsuits for judicial review. As the Court previously explains, "once the 180 day deadline passes, FEMA's decision becomes final and appealable." Gallegos v. FEMA, 2025 WL 961665, at *34. That finality is not partial or issue-specific; it attaches to the agency's determination as a whole. Accordingly, when a claimant invokes judicial review, the Court must review the entirety of FEMA's final decision and not adjudicate discrete components of that decision in separate, successive proceedings.

To hold otherwise would fundamentally alter the statutory design. If a claimant could return to federal court in multiple actions challenging different components of the same final

determination, the "final decision" would cease to function as a single reviewable act. Instead, it would become a fragmented set of independent sub-decisions, each subject to its own judicial proceeding. One case could address noneconomic damages, another mortgage interest, another evacuation expenses, and still others additional categories of loss. Nothing in the HPA suggests Congress intends such a piecemeal regime. The statute's use of the singular -- "a final decision" and "a civil action" -- reflects the opposite intent: that judicial review is a single, comprehensive proceeding directed at a single, complete agency determination.

Finality's nature reinforces this understanding. A "final decision" is not a set of separate rulings that the claimant can challenge one at a time; a "final decision" is the agency's final and complete resolution of a claim. Once the claimant presents that decision for judicial review, the Court's task is to determine whether the Court should modify that final agency action. The Court does not engage in iterative review of the same final action across multiple lawsuits. Rather, the statutory grant of jurisdiction ceases when the Court exercises its authority over the final decision once.

Traditional preclusion principles further confirm this reading. The Tenth Circuit holds:

> When a valid and final judgment rendered in an action extinguishes the plaintiff's claim pursuant to the rules of merger or bar . . . the claim extinguished includes all rights of the plaintiff to remedies against the defendant *with respect to all or any part of the transaction, or series of connected transactions, out of which the action arose*.

Hatch v. Boulder Town Council, 471 F.3d 1142, 1146 (10th Cir. 2006)("Hatch")(emphasis in original). The relevant inquiry is whether claims arise from the same transaction or series of transactions, considering whether they are related in time, space, origin, and motivation, and whether they form a convenient trial unit. See Hatch, 471 F.3d at 1149.

Here, all disputed components of Priddy's claim arise from a single transaction: FEMA's final decision for losses arising from the Hermit's Peak/Calf Canyon Fire. That determination is

the operative final agency action. It is the unitary decision that Congress makes subject to judicial review. Once the claimant brings that decision before the Court and the Court adjudicates that decision, the entire transaction is exhausted for purposes of judicial review. The governing principle is not whether a party previously chose to raise a particular issue, but whether the Court already has exercised its statutory authority over the final agency action that gives rise to all such issues.

Policy considerations strongly reinforce this conclusion. Courts consistently recognize that "claim-splitting and claim preclusion both serve the same interests of promoting judicial economy and shielding parties from vexatious concurrent or duplicative litigation." Hernandez v. Asset Acceptance, LLC, 970 F. Supp. 2d 1194, 1201 (D. Colo. September 10, 2013)(Krieger, C.J.). Allowing repeated judicial review of a single FEMA determination would undermine finality, multiply litigation over the same agency action, and create uncertainty regarding the scope and closure of judicial judgments.

Such a regime also would impose significant administrative and judicial burdens. Courts would have to police successive lawsuits arising from the same final agency decision, determining in each instance whether the new challenge is distinct or merely a repackaged attempt to relitigate the same final action. FEMA, likewise, would be left without clear closure as to whether the Court conclusively has reviewed its final determinations. Piecemeal review could defeat the statutory goal of efficient, centralized review of agency determinations.

These concerns are particularly acute given that Congress establishes a finite compensation fund to address Hermit's Peak Fire claims. Judicial efficiency directly affects the administration of that fund. Fragmented litigation increases costs, delays resolution, and reduces the predictability necessary for orderly distribution of limited resources. The statutory scheme is best

understood as requiring claimants to present all challenges to a final determination in a single judicial proceeding, thereby ensuring both fairness and finality.

This conclusion, however, is limited to successive judicial review proceedings arising from the same claim and the same final agency decision. This limitation follows from the statutory language, which provides that a claimant's acceptance of payment under the HPA is "final and conclusive" with respond to "all claims arising out of or relating to the same subject matter" and constitutes a complete release of claims against the United States arising out of or relating to that same subject matter. HPA § 104(e)(1). The statute therefore ties the preclusive effect of the accepted award to the subject matter of the claim for which the award is made; it does not establish a single, claim-wide bar on judicial review of every other claim a claimant may have. Accordingly, a claimant who has multiple claims, each identified by a separate claim number and resulting in a separate final agency decision, is not limited to a single judicial review action across all of those claims. The relevant unit for purposes of the Court's analysis is the claim number and the final agency decision associated with that claim. Thus, a claimant may bring a subsequent judicial review action concerning a different claim number and a different final agency decision, even if that claimant previously sought judicial review of another claim. What the HPA does not permit is a claimant's returning to the Court to obtain a second judicial review of additional components of the same final agency decision under the same claim number, because acceptance of that award for that claim is final and conclusive as to all claims arising out of or relating to the same subject matter.

The Court therefore will not modify again FEMA's final decision for Priddy. The HPA authorizes judicial review of a final agency decision through a single civil action, and, once the claimant brings that action and the Court adjudicates that action, the Court loses authority over that final decision. Having already obtained judicial review and a judgment modifying FEMA's

final determination, Priddy may not seek a second judicial review of additional components of the same final agency decision.

### F. THE COURT MODIFIES FEMA'S FINAL DECISION FOR CASSANDRA RODRIGUEZ.

The Court modifies FEMA's final decision for Rodriguez and enters $24,995.06 in total compensation, which includes $18,000.00 in noneconomic nuisance damages. The Court starts with noneconomic damages as these inform the claims preparation expenses to come. Rodriguez challenges FEMA's denial of her $25,000.00 noneconomic nuisance damages request. See Final Claim Determination at 2 (dated August 22, 2024)(Rodriguez-JR-AR-0221)("Rodriguez Final Determination"). Rodriguez tells FEMA that, as a result of the fire, she suffers from smoke inhalation, and "illness involving eyes, nasal passage, throat, and lungs." Notice of Loss at 5 (dated November 3, 2023)(Roddriguez-JR-AR-0051)("Rodriguez Notice of Loss"). Her children also have allergies from the fire and smoke inhalation requiring inhalers and Nebulizer treatments. See Rodriguez Notice of Loss at 5. Rodriguez tells FEMA that the fire negatively affects her life and property because she can no longer spend the time she wants outdoors. See Rodriguez Notice of Loss at 5. FEMA nevertheless awards Rodriguez $0.00 for noneconomic damages. See Rodriguez Final Determination at 2.

FEMA maintains that the agency should not award any noneconomic damages, because, according to FEMA, the HPA does not provide, as a matter of law, compensation for noneconomic damages. See FEMA's Hearing Brief at 44. As discussed in Gallegos, "a legal argument is not substantial evidence." Gallegos, 2025 WL 2029724, at *34. Thus, the Court concludes that neither the law nor substantial evidence supports the $0.00 noneconomic damages figure in the Rodriguez Final Determination, which is the final decision under review here, because that offer does not reflect the not insignificant discomfort, inconvenience, and annoyance that Rodriguez experiences.

Accordingly, the Court modifies FEMA's final decision and enters $18,000.00 in noneconomic damages.

Finally, the Court calculates Rodriguez' claims preparation expense. Reimbursement for claims preparation expenses is compensable under 44 C.F.R. 296.31(a). See FEMA's Hearing Brief at 10. The amount awarded for claims preparation expenses is "the greater of $150 or 5% of the Act's compensatory damages and insurance proceeds recovered by the claimant for HPCC Fire related injuries (not including the lump sum payment or monies reimbursed under the Act for the purchase of flood insurance) but will not exceed $25,000.00." 44 C.F.R. 296.31(b). Here, Rodriguez' economic damages ($5,804.82) and noneconomic damages ($18,000.00) total $23,804.82. Five percent of $23,804.82 is $1,190.24. Accordingly, the Court awards Herrera $1,190.24 in claims preparation expenses and orders FEMA to pay her a total of $24,995.06 on her disputed claim, including $18,000.00 in noneconomic nuisance damages.

**IS IT ORDERED** that: (i) FEMA shall pay: (a) $24,694.95 to Plaintiff Tanya Arrellin; (b) $234,389.91 to Plaintiff Anne Bernal; (c) $1,169,687.91 to Plaintiff Mary Ann Fisher; (d) $455,760.78 to Plaintiff Mary Alice Herrera; (e) $272,125.75 to Plaintiff Mary Jo Kesler; (f) $120,291.78 to Plaintiff Semilla Natural Foods, LLC; and (g) $24,995.06 to Plaintiff Cassandra Rodriguez; and (ii) Final Judgment shall be entered.

James O. Browning

UNITED STATES DISTRICT JUDGE

*Counsel:*

Brian S. Colon
Jesse Gallegos
Jacob Payne
Robert James Sanchez
Singleton Schreiber LLP
Albuquerque, New Mexico

--and--

H. Vern Payne
Singleton Schreiber LLP
Los Lunas, New Mexico

-- and --

Gerald Singleton
Benjamin Siminou
Jonna D. Lothyan
Singleton Schreiber LLP
San Diego, California

*Attorneys for the Plaintiffs*

Nicholas M. Sydow
Carrie Y. Yang
Assistant United States Attorneys
United States Attorney's Office
Albuquerque, New Mexico

*Attorneys for the Defendants*